AO91 (Rev. 12/03) Criminal Complaint

# UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA
V.
ANDREW HUNT

(Name and Address of Defendant)

## CRIMINAL COMPLAINT

Case Number: 06 mj 234

I, the undersigned complainant state that the following is true and correct to the best of my knowledge and belief. On or about 7/21/05, 9/12/05 and 4/13/2006 (Date) in SHELBY County, in the WESTERN District of TENNESSEE defendant(s) did,

*(Track Statutory Language of Offense)*

conspiracy to violate civil rights
Hobbs Act (armed robbery)
possession of a firearm during a crime of violence or drug crime
conspiracy to distribute a controlled substance, to wit: cocaine

in violation of Title 18 and 21 United States Code, Section(s) 241, 1951, 924(c), and 846 .

I further state that I am a(n) SPECIAL AGENT (Official Title) and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part of this complaint: ☑ Yes ☐ No

Tracey L. Harris
Signature of Complainant

Tracey L. Harris
Printed Name of Complainant

Sworn to before me and signed in my presence,

4/13/2006 at 2 12 PM
Date

at MEMPHIS, TENNESSEE
City State

JAMES R. ALLEN
Name of Judge

U.S. MAGISTRATE
Title of Judge

s/ James H. Allen
Signature of Judge

**AFFIDAVIT**

My name is Tracey Harris and I have been a Special Agent with the Federal Bureau of Investigation for eight years.

In January of 2006, Memphis Police Department (MPD) Security Squad approached federal authorities with an investigation of Memphis Police Reserve Officer Andrew Hunt. Sergeant Matt Whittington of the MPD Security Squad had conducted the following investigation:

In November 1, 2005, Sgt. Whittington interviewed Cooperating Witness number 1, hereinafter referred to as "CW No. 1." CW No. 1 admitted that he had dealt drugs and sold drugs in the Memphis area. In May of 2005, he was approached by uniformed police officer Andrew Hunt. Hunt had grown up in the neighborhood and gone to school with CW No. 1. Hunt proposed a plan where CW No. 1 would set up his drug suppliers to be robbed by Hunt while on duty. Hunt proposed that CW No. 1 would call and order drugs to be delivered, Hunt would be sitting in a marked squad car nearby and make a traffic stop as the drug suppliers were approaching the scene. Hunt would then confiscate drugs and other things of value and split the proceed with CW No. 1.

The first robbery occurred on July 21, 2005. CW No. 1 arranged the purchase of one kilogram of powder cocaine from an individual, hereinafter referred to as "CW No. 2." At approximately 8:00 p.m., CW No. 2 was delivering one kilogram of podwer cocaine when Officer Hunt while in uniform and using a marked squad car made a traffic stop at Vollintine and Brown. Upon placing CW No. 2 in the back of the squad car, he removed approximately $1000 in cash from the pocket of CW No. 2, a $15,000 Jacob watch from the wrist of CW No. 2, and a Motorola/T-Mobile cell phone.

After placing CW No. 2 in the squad car, Hunt explained to CW No. 2 that he was not going to arrest him but if CW No. 2 produced $15,000 in cash he would return the one kilogram of cocaine. Hunt advised that he was going to keep CW No. 2's cell phone and CW No. 2 was to call the cell phone the following day to be advised where to make the cash drop.

The following day CW No. 2 called the cell phone and advised he could only arrange for $9,500. Hunt agreed to accept the cash in order to return the cocaine. Hunt then instructed CW No. 2 to place the money in a dumpster at the dead end of Village Grove Road, near the Village Grove Apartments. Hunt then told CW No. 2 to then drive to the Circle K at Knight Arnold and Ridgeway and wait by a pay phone until called.

CW No. 2 placed the cash in the dumpster and went to the Circle K and waited by the telephone and never received a call. CW No. 2 then returned to the dumpster to find the $9,500 missing and never received any additional communications from Hunt. CW No. 2 positively identified Hunt as the officer from a photographic spread. After this transaction, CW No. 1 advises he met Hunt at a hotel on American Way where Hunt split the proceeds of the transaction giving CW No. 1 $5,000 in cash. After being confronted and properly Mirandized in an interview on April 13, 2005, Officer Hunt confessed and admitted to this transaction. Additionally, Hunt was found at the time of his arrest, to be in possession of the T-Mobile cell phone taken from CW No. 2.

TH

The second robbery occurred on September 12, 2005, when CW No.1 arranged a purchase of four kilograms of powder cocaine. CW No. 1 arranged for the cocaine to be delivered in the area of Riverdale and Winchester. Again, Hunt was standing by in a Memphis Police uniform wearing a firearm and driving a marked squad car. Two Hispanics driving an SUV were delivering the cocaine when Hunt pulled them over for traffic charges near Riverdale and Winchester. Hunt then instructed them to pull into an apartment complex. After pulling into the complex, Hunt's personal pickup truck, a Chevrolet 1500 blue in color, was sitting in the parking lot occupied by Laterrica "Nookie" Woods and an unidentified male black. Hunt placed the Hispanics in his squad car and Laterrica Woods got into the Hispanics' SUV and Hunt, Woods and the unidentified male black driving Hunt's truck relocated to an isolated area in the Nonconnah Corporate Park near Millbranch and I-240. Hunt then approached the two Hispanics and advised them he would release them if they could call somebody and have money delivered. At the time, Hunt had seized the four kilograms of powder cocaine being delivered by the two Hispanics. Numerous phone calls were made attempting to have money delivered but the Hispanics were unable to arrange delivery. Because of this delay, they sat at the Corporate Park for an extended period of time approaching approximately two hours.

The security guard for the Nonconnah Complex approached the situation but was stopped by Hunt and he advised he was working a drug deal and turned him away. The security guard has positively identified Hunt from a photographic spread.

When no money was produced, Hunt then moved the cars to Millbranch near I-240, called in a traffic stop, and placed the two Hispanics under arrest. After arresting the Hispanics and transporting them to the Criminal Justice Complex, Hunt then only tagged at the property room, 189.5 grams of cocaine. The remainder of the 4000 grams was not tagged into evidence.

The two Hispanics in this situation have been interviewed by the Security Squad and both picked Hunt and Laterrica Woods from a photo spread. The Hispanics identified Hunt as the police officer that robbed them that evening. CW No. 1 identified Laterrica "Nookie" Woods as the second individual involved.

On the morning of April 13, 2006, Hunt confessed to making the stop and being accompanied by Laterrica Woods in this incident and that he had been assisted by CW No. 1 in arranging this stop.

Investigation has also revealed that on March 28, 2006, Hunt initiated a traffic stop involving CW No. 3. CW No. 3 admitted he was in possession of nine ounces of powder cocaine and two pounds of marijuana. CW No. 3 gave a statement to investigators that Hunt then took his cell phone and driver's license, advising him he would call him to set up robberies essentially similar as those committed with CW No. 1. On April 12, 2006, CW No. 3 cooperating with the MPD and the FBI, made two recorded conversations advising Hunt that he had three kilos of powder cocaine being delivered to a location on Elvis Presley Boulevard. This was an undercover operation being conducted jointly by the MPD and the FBI and was recorded by CW No. 4. Hunt stopped CW No. 4 in a car with three kilograms of powder represented to be cocaine. Hunt called in the radio stop, searched the vehicle and found three kilos of cocaine. Hunt then made a cellular telephone call to Officer Tony Parks of MPD's Organized Crime Unit asking him to come out to the scene. Hunt

advised Parks that he had found two kilos of cocaine, instead of the three that were actually in the car. Upon arrival, Hunt advised Officer Parks that he had made a traffic stop and found two kilograms of cocaine. Based on this, CW No. 4 was placed under arrest and transferred to the Organized Crime office. Hunt was asked to fill out an arrest ticket where he claimed he made a traffic stop for improper lane change and saw the cocaine in plain view lying on the front seat. Hunt then only turned over two kilograms of cocaine to Officer Parks. After being arrested at the Organized Crime Unit, a search of Hunt's squad car found the third kilogram concealed in a bag in the front passenger floorboard of the squad car.

During Hunt's statement given after his arrest, he admitted that he deliberately and willfully concealed the one kilogram of what was represented to be cocaine and did not turn it over to Organized Crime Squad.

During all three instances enumerated in this affidavit, Hunt was a Memphis Police Officer wearing a uniform and a MPD issued firearm.

And further, your affiant saith not.

Tracey R. Harris

TRACEY HARRIS
FEDERAL BUREAU OF INVESTIGATION

SUBSCRIBED TO AND SWORN BEFORE
ME THIS 13th DAY OF APRIL, 2006, IN MEMPHIS, TENNESSEE AT 2:12 ~~A.M.~~ ~~OR~~ P.M.

s/ James H. Allen

UNITED STATES MAGISTRATE JUDGE